**Allen ARD and Wanda Ard, Appellants,**

v.

**GEMINI EXPLORATION COMPANY, Resolve Drilling Company, et al., Appellees.**

**No. A14–93–01045–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 17, 1994.

Steven C. Barkley, Jerry L. Hatton, Beaumont, for appellants.

William King, George Petras, IV, Austin, John W. Odam, Clayton A.L. Davis, Edgar F. Barnett, Houston, for appellees.

Before BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Allen and Wanda Ard, appellants ("the Ards"), appeal the summary judgment granted in favor of RRS Services, Inc. ("RRS") and Stonewall Insurance Company ("Stonewall"), and the dismissal of their claims against Gemini Exploration Company ("Gemini") and Resolve Drilling Company ("Resolve"). The Ards sued to enforce an indemnity agreement between Resolve and RRS, Allen Ard's employer, and to receive payment under the policy issued by Stonewall, RRS' excess insurance carrier. We affirm in part, and reverse and remand in part.

RRS, Ard's employer, was working under contract with a rig owner, Resolve, to drill an oil well for Gemini. The contract between RRS and Resolve contained an indemnity section in which RRS agreed to indemnify Resolve for certain actions brought against Resolve by RRS employees.[1] Pursuant to the agreement, RRS purchased a $1,000,000.00 insurance policy from Homestead Insurance Company ("Homestead") and a $4,000,000.00 excess insurance policy from Stonewall. Resolve reimbursed RRS for the premium payments on both policies. Resolve also purchased for itself a $1,000,000.00 primary insurance policy from Homestead.

On March 23, 1990, while working on the oil rig, Ard broke three vertebrae in his neck, causing him to become partially quadriplegic. Ard and his wife filed suit against Resolve and Gemini, seeking damages for his injuries. The Ards entered into a settlement agreement with Resolve and Gemini under which the Ards received the proceeds of the primary Homestead policy and an assignment of all causes of action that Resolve and Gemini had against RRS and Stonewall. In return, the Ards executed a covenant not to execute any judgments rendered against Resolve. As the assignee of Resolve's rights against RRS under the indemnity agreement, and as a putative third party beneficiary under the Stonewall policy, the Ards filed suit against RRS and Stonewall to collect under the $4,000,000.00 policy RRS had purchased from Stonewall.

RRS, Stonewall and the Ards[2] filed motions for summary judgment. The trial court granted summary judgment in favor of RRS and Stonewall, and denied the Ards' motion.

---

1. *See infra. p. 14 for the text of the Indemnity Agreement.*

2. The Ards' grounds for summary judgment were: (1) RRS was obligated to contractually indemnify Resolve; and (2) RRS was contractually obligated to provide $5,000,000.00 in insurance coverage to protect Resolve from the Ards' claim.

The court below further decreed that because the Ards executed a non-execution covenant with Resolve and Gemini, all real controversy at interest was rendered moot[3] and dismissed the case.

The Ards allege three points of error: (1) the trial court erred in granting summary judgment for RRS and Stonewall; (2) the trial court erred in overruling the Ards' motion for summary judgment; and (3) the trial court erroneously dismissed the Ards' claims against Resolve and Gemini, as neither party moved for summary judgment.

## I.

■ In their first point of error, the Ards assert that summary judgment was erroneously granted. The standards for reviewing the grant of a summary judgment are well established. First, the movant must show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Second, evidence favorable to the non-movant will be taken as true. Third, every reasonable inference and any doubts must be indulged in the non-movant's favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985). Furthermore, when a trial court's order does not state the grounds on which the summary judgment is granted, as is the case here, summary judgment must be affirmed if any of the grounds advanced in the motion are meritorious. *Zimmelman v. Harris County,* 819 S.W.2d 178, 181 (Tex.App.—Houston [1st Dist.] 1991, no writ).

RRS and Stonewall advanced the following grounds for summary judgment: (1) the in-

demnity agreement between RRS and Resolve was unenforceable; (2) the indemnity agreement was void, pursuant to the Texas Oil Field Anti–Indemnity Statute, TEX.CIV. PRAC. & REM.CODE ANN. § 127.001–005; (3) the Texas Oil Field Anti–Indemnity Statute limited RRS' obligation to provide insurance coverage to $500,000.00; (4) RRS was not obligated to indemnify Gemini; and (5) the Ards' non-execution covenant eliminated any potential indemnity obligation by RRS or insurance obligation by Stonewall. Because the trial court's final order did not state the basis for the summary judgment, we must examine all of the theories advanced by RRS and Stonewall to determine whether any one is meritorious.

In its first theory in support of summary judgment, Stonewall argued that the indemnity agreement between RRS and Resolve was unenforceable for three reasons: (1) it violated the express negligence rule; (2) personal injury claims were not covered within the scope of the agreement; and (3) the claim was barred by the ·Texas Workers' Compensation Act.

■ Stonewall and RRS, in briefs and at submission, urged that because personal injury was not specifically listed as a claim covered by the indemnity agreement, the agreement did not meet the requirements of the express negligence test. Stonewall and RRS, however, misapply the express negligence test. The express negligence test is very narrow, requiring simply that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms."[4] *Eth-*

---

3. *See infra* section II for discussion.

4. To determine whether the Resolve–RRS agreement met the requirements of the express negligence test, we compared it with properly drafted agreements. For example, a contractor's agreement to indemnify an operator from all claims "without regard to the cause or causes thereof or the negligence of any party ..." met the requirements. *Maxus Exploration Co. v. Moran Bros.,* 817 S.W.2d 50, 56 (Tex.1991).

 Furthermore, an agreement to indemnify ARCO against all liability "in any matter arising from the work performed hereunder, including but not limited to any negligent act or omission of [ARCO] ..." also met the requirements. *At-*

*lantic Richfield Co. v. Petroleum Personnel Inc.,* 768 S.W.2d 724, 726 (Tex.1989).

 In *Enserch Corp. v. Parker,* 794 S.W.2d 2, 8 (Tex.1990), the Supreme Court held that an agreement requiring the contractor to indemnify Enserch for all claims "regardless of whether such claims or actions are founded in whole or in part upon alleged negligence of Enserch" met the express negligence test.

 This court also held that an agreement providing indemnity for claims "without limit and without regard to the cause or causes thereof or the negligence of any party or parties" met the express negligence test. *Adams Resources Exploration Corp. v. Resource Drilling, Inc.,* 761 S.W.2d 63, 65 (Tex.App.—Houston [14th Dist.] 1988, no writ).

*yl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987). The agreement at issue stated:

> 5. *Indemnity.* Contractor [RRS] agrees to indemnify and hold the Company [Resolve], including its affiliates, directors, officers, shareholders, employees, successors and assigns (collectively, the "Company Indemnified Parties"), harmless from all suits, actions, demands, damages, costs, expenses, or claims or any character, type or description, including the expenses of litigation, court costs, and reasonable attorney fees brought or made for or on account of the employment relationship between contractor and its employees, including, without limitation, all suits, actions, claims, demands, damages, costs, or expenses brought by contractor's employees under the applicable workers' compensation statute and other claims by its personnel for violation of civil rights, hiring practices and other employment laws. *Such obligation of the contractor to indemnify the Company Indemnified Parties shall be without regard to the cause or causes* (including preexisting conditions or conditions of the workplace or equipment provided by the Company) *or the negligence of the Company Indemnified Parties, whether the negligence be active or passive, sole or concurrent, simple or gross, comparative, contractual, or any other degree or type of negligence . . . .* (emphasis added)

This Court has held that when indemnity agreements fail the express negligence test, it is generally because either negligence is not specifically mentioned, or the extent of coverage to be applied was not specified.[5] *Adams Resources Exploration Corp. v. Resource Drilling, Inc.,* 761 S.W.2d 63, 65 (Tex. App.—Houston [14th Dist.] 1988, no writ). The indemnity agreement in this case, however, clearly states that (1) RRS is to indemnify Resolve, (2) for Resolve's own negligence, (3) regardless of whether Resolve is solely or concurrently negligent. We find

that this agreement meets the requirements of the express negligence test.

 Even if the express negligence requirements are met, however, the scope of the agreement must cover the type of claim sued upon. RRS and Stonewall argue that the scope of the RRS–Resolve agreement is not sufficiently broad to require RRS to indemnify Resolve for personal injury claims, but only for employment law claims. Appellees offer the following language from the agreement in support of their contention:

> [RRS] agrees to indemnify and hold the Company [Resolve] . . . harmless from all suits, actions, demands, damages, costs, expenses, or claims of any character, type or description, . . . brought or made for or on account of the employment relationship between contractor and its employees, including, without limitation, all suits . . . brought by contractor's employees under the applicable workers' compensation statute and other claims by its personnel for violation of civil rights, hiring practices and other employment laws.

Appellees contend that since personal injury or death claims are not mentioned, its indemnity responsibility is limited to the employment-type claims specifically listed. The Ards counter that because the agreement requires RRS to indemnify Resolve for "all suits, actions, demands, damages, costs, expenses, or claims or any character, type or description . . . made for or on account of the employment relationship . . ." the intent of the parties was that all claims by employees that arise through an on-the-job occurrence be covered—including personal injury claims. However, the Supreme Court requires that indemnity agreements be strictly construed to give effect to the parties' intent *as expressed in the agreement. Ideal Lease Service v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex.1984) (emphasis added). All of the indemnity agreements we have reviewed that intend for personal injury to be covered specifically list personal injury in the agreement.

---

5. *See, e.g., Ethyl,* 725 S.W.2d at 705 (indemnity provision only clearly stated that it covered indemnitor's negligence, not indemnitee's); *Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.,* 739 S.W.2d 239, 240 (Tex.1987) (indemnity provision did not specifically refer to negligence); *Singleton v. Crown Central Petroleum Corp.,* 729 S.W.2d 690, 691 (Tex.1987) (the broadly worded provision did not state there was indemnity for concurrent negligence).

We find that the failure to specifically list personal injury as a covered claim precludes indemnity for the personal injury claim. Even if the Ards are correct in their assertion that the parties intended for personal injury claims to be covered:

> [w]e are precluded from expanding the scope of this coverage beyond that stated in the contract based solely upon what this Court may perceive to be the improperly expressed intentions of the parties.... [W]e may not expand the parties' rights or responsibilities beyond the limits agreed upon by them in the contract.

*Id.*

Therefore, we conclude that while the indemnity agreement meets the express negligence test, it does not encompass personal injury claims. We hold that the summary judgment was correctly granted and overrule the Ards' first point of error. Because of our holding on the first point of error, we need not discuss the second point of error.

## II.

The Ard's third point of error is that the trial court erred in dismissing the Ards' claims against Resolve and Gemini, since neither Resolve nor Gemini moved for summary judgment.

RRS and Stonewall contend that since the Ards contracted not to execute any judgment assessed against Resolve, Resolve cannot be required to make any payments to the Ards. Therefore, appellees argue, RRS will have no basis by which to indemnify Resolve or, in turn, to call upon its insurer, Stonewall, to provide coverage. The trial court, apparently applying appellees' reasoning, held that the covenant not to execute rendered the controversy moot, and dismissed the Ards' claims against Resolve and Gemini. Since this appeal was filed, Resolve discovered that it was covered by a $5,000,-000.00 insurance policy, written by Highlands Insurance Company. The policy provides that if a judgment is rendered against Resolve, Highlands will pay the judgment up to the policy limits. Therefore, even though this Court has determined that the indemnity agreement between RRS and Resolve is in-

applicable to personal injury claims, thereby absolving RRS and Stonewall from their indemnity obligations in this case, we must still decide whether the covenant not to execute destroys any possible liability on the part of Highlands so as to render the controversy truly moot. We hold that it does not.

A covenant not to execute is a contract rather than a release. *Garcia v. Am. Physicians Ins. Exch.,* 812 S.W.2d 25, 33 (Tex.App.—San Antonio 1991), *rev'd on other grounds,* 876 S.W.2d 842 (Tex.1994); *Y.M.C.A. of Metro. Fort Worth v. Commercial Standard Ins. Co.,* 552 S.W.2d 497, 505 (Tex.App.—Fort Worth 1977), *writ ref'd n.r.e., per curiam,* 563 S.W.2d 246 (Tex.1978). Its legal effect is similar to a covenant not to sue because it does not eliminate a damage award; the underlying tort liability remains. *Garcia,* 812 S.W.2d at 32–33; *Y.M.C.A.,* 552 S.W.2d at 505. Therefore, the fact that the indemnitee, Resolve, will not have to pay any damages does not eradicate Resolve's liability, nor does it eradicate an indemnitor's or an insurer's duty to pay. *Garcia,* 812 S.W.2d at 33. We sustain the Ards' third point of error and remand the Ards' personal injury and loss of consortium claims against Resolve and Gemini for trial on the merits.

Accordingly, the judgment of the trial court is affirmed in part, and reversed and remanded in part.