Opinion issued April 12, 2007


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00487-CV






CABO CONSTRUCTION, INC., Appellant


V.


R S CLARK CONSTRUCTION, INC. AND RANDALLS FOOD MARKETS,
INC., Appellees






On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 2002-57602






O P I N I O N


 Appellant, Cabo Construction, Inc. appeals the trial court's order granting
summary judgment in favor of appellees, R S Clark Construction, Inc. ("Clark") and
Randalls Food Markets, Inc. ("Randalls"). In four issues on appeal, Cabo argues that
(1) the trial court improperly relied on pleadings in granting summary judgment; (2)
the indemnity agreement did not satisfy the express negligence test; and (3) because
the indemnity agreement does not pass the express negligence test, Cabo should not
have to pay legal fees and expenses incurred by Clark and Randalls. 

 We reverse and remand.

Background


 On September 10, 2001, Annie Hopkins, a customer in a Randalls grocery store
that had been undergoing remodeling, sustained an injury after slipping and falling
in the store. Hopkins brought suit for negligence against Randalls and Clark, the
general contractor for the remodeling job.

 At the time of the remodeling, Clark and Randalls had entered into an
agreement with Cabo for Cabo to serve as a subcontractor (the "Clark-Cabo
agreement"). After Hopkins sued them, Clark and Randalls brought a third-party
petition against Cabo seeking contribution and/or complete indemnity for the claims
alleged by Hopkins. Clark and Randalls denied their own negligence and pled that
Cabo "is believed to have been the company that dug a trench in the Randalls store
in question which is the trench that is the subject of this lawsuit."

 Clark and Randalls filed a joint motion for summary judgment seeking to
enforce the indemnity provision in the Clark-Cabo agreement. They relied on
paragraph 4.6 of the agreement, (1) which provided:

 4.6 INDEMNIFICATION

 4.6.1 To the fullest extent permitted by law, the Subcontractor
[Cabo] shall indemnify and hold harmless the Owner
[Randalls], Contractor [Clark], Architect, Architect's
consultants, and agents and employees of any of them from
and against claims, damages, losses and expenses,
including but not limited to attorney's fees, arising out of
or resulting from performance of the Subcontractor's
[Cabo's] Work under this Subcontract, provided that any
such claim, damage, loss or expense is attributable to
bodily injury, sickness, disease or death, or to injury to or
destruction of tangible property (other than the Work
itself), but only to the extent caused by the negligent acts
or omissions of the Subcontractor [Cabo], the
Subcontractor's Sub-subcontractors, anyone directly or
indirectly employed by them or anyone for whose acts they
may be liable, regardless of whether or not such claim,
damage, loss or expense is caused in part by a party
indemnified hereunder. Such obligation shall not be
construed to negate, abridge, or otherwise reduce other
rights or obligations of indemnity which would otherwise
exist as to a party or person described in this Paragraph 4.6.(Emphasis added.) Cabo responded that the indemnity provision was unenforceable
because it did not pass the express negligence test. The trial court granted the motion
for summary judgment without stating its reasons. The trial court later severed the
indemnity claim against Cabo. Cabo filed a motion for new trial, which was denied. 
Standard of Review


 Summary judgment is a question of law. Provident Life & Accident Ins. Co.
v. Knott, 128 S.W.3d 211, 220 (Tex. 2003). Thus, we review a trial court's summary
judgment decision de novo. Id. The standard of review for a traditional summary
judgment motion is threefold: (1) the movant must show that there is no genuine issue
of material fact and that he is entitled to judgment as a matter of law; (2) in deciding
whether there is a disputed material fact issue precluding summary judgment, the
court must take evidence favorable to the nonmovant as true; and (3) the court must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts
in the nonmovant's favor. Tex. R. Civ. P. 166a(c); Pustejovsky v. Rapid-Am. Corp.,
35 S.W.3d 643, 645-46 (Tex. 2000); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548-49 (Tex. 1985). A defendant seeking summary judgment must, as a matter of
law, negate at least one element of each of the plaintiff's theories of recovery or plead
and prove each element of an affirmative defense. See Randall's Food Markets, Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

 If the trial court has granted summary judgment without specifying the ground
or grounds relied on for the ruling, summary judgment will be affirmed on appeal if
any of the theories advanced is meritorious. See State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 380 (Tex. 1993).


Indemnity


 In its first issue on appeal, Cabo argues that the indemnity provision does not
expressly indemnify Clark and Randalls for their own negligence and thus does not
pass the express negligence test required for validity. 

 Because indemnity provisions seek to shift the risk of one party's future
negligence to the other party, Texas imposes a fair notice requirement before
enforcing such agreements. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d
505, 508 (Tex. 1993). The fair notice requirements are the express negligence
doctrine and the conspicuousness requirement. Storage & Processors, Inc. v. Reyes,
134 S.W.3d 190, 192 (Tex. 2004). Under the express negligence doctrine, an intent
to indemnify one of the parties from the consequences of its own negligence, "must
be specifically stated in the four corners of the document." Id. (quoting Ethyl Corp.
v. Daniel Constr. Co., 725 S.W.2d 705, 707 (Tex. 1987)). The conspicuousness
requirement mandates that "something must appear on the face of the [contract] to
attract the attention of a reasonable person when he looks at it." Id. (quoting Dresser,
853 S.W.2d at 508). Language is conspicuous if it appears in larger type, contrasting
colors, or otherwise calls attention to itself. Dresser, 853 S.W.2d at 511; see also
Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (Vernon Supp. 2006). Whether an
agreement meets the conspicuous requirement is a question of law for the court. 
Dresser, 853 S.W.2d at 509. An agreement that does not "satisfy either of the fair
notice requirements when they are imposed is unenforceable as a matter of law." 
Reyes, 134 S.W.3d at 102. "However, if both contracting parties have actual
knowledge of the plan's terms, an agreement can be enforced even if the fair notice
requirements were not satisfied." Id.

 Here, the indemnity provision expressly states that Cabo will indemnify Clark
and Randalls for claims arising from Cabo's negligence, but it does not expressly
state that Cabo will indemnify Clark and Randalls for claims arising from their own
negligence. Nevertheless, Clark and Randalls rely on the language toward the end
of the indemnity provision to show that Cabo must indemnify them for their
negligence. Specifically, they rely on the proviso which states that Cabo will
indemnify Clark and Randalls for Cabo's negligence, 

but only to the extent caused by the negligent acts or omissions of the
Subcontractor [Cabo], the Subcontractor's Sub-subcontractors, anyone
directly or indirectly employed by them or anyone for whose acts they
may be liable, regardless of whether or not such claim, damage, loss or
expense is caused in part by a party indemnified hereunder.


Because the language Clark and Randalls rely on is unclear as to who is indemnified
and for what, the indemnity provision is ambiguous. Ambiguous indemnity
provisions are unenforceable. See Ethyl, 725 S.W.2d at 707-08; Monsanto Co. v.
Owens-Corning Fiberglas Corp., 764 S.W.2d 293, 296 (Tex. App.--Houston [1st
Dist.] 1988, no writ). 

 The controlling case is Ethyl Corp. v. Daniel Const. Co., which adopted the
express negligence test. 725 S.W.2d 705, 708 (Tex. 1987). In Ethyl, an employee of
a contractor, Daniel, brought a third-party personal injury claim against the owner,
Ethyl. Id. at 706-07. The contract between Ethyl and Daniel provided, 

 Contractor [Daniel] shall indemnify and hold Owner [Ethyl] harmless against
any loss or damage to persons or property as a result of operations growing out
of the performance of this contract and caused by the negligence or
carelessness of [Daniel], [Daniel's] employees, Subcontractors, and agents or
licensees.


Id. at 707 (emphasis added). The issue, as here, was whether the contract indemnified
Ethyl for its own negligence. The supreme court held that it did not under the express
negligence doctrine, which "provides that parties seeking to indemnify the indemnitee
from consequences of its own negligence must express that intent in specific terms." 
Id. at 708. The contract did not expressly indemnify Ethyl for its own negligence; nor
did it entitle Ethyl to comparative indemnity to the extent of Daniel's negligence,
which the jury found to be 10%, because it did not contain a comparative negligence
provision. Id. The court opined that parties could have contracted for comparative
indemnity, but "[i]ndemnitees seeking indemnity for the consequences of their own
negligence which proximately causes injury jointly and concurrently with the
indemnitor's negligence must also meet the express negligence test." Id. at 708-09. 
Here, as in Ethyl, the express-negligence rule is not met.

 We note that the Dallas Court of Appeals has held that language nearly
identical to the indemnity provision in this case failed to meet the requirements of the
express negligence doctrine. See Adams v. Spring Valley Constr. Co., 728 S.W.2d
412, 414 (Tex. App.--Dallas 1987, writ ref'd n.r.e.). In Adams, the court of appeals
reviewed an indemnity agreement contained in a certificate of insurance. The
indemnity agreement provided,

The Subcontractor shall indemnify and hold harmless the contractor . . .
against all claims, damages, losses and expenses, including attorney's
fees, arising out of or resulting from the performance of the
Subcontractor's Work under the Contract Documents, provided that any
such claim, damage, loss or expense (a) is attributable to bodily injury,
sickness, disease or death, . . . and (b) is caused in whole or in part by
[a] negligent act or omission of the Subcontractor or anyone directly or
indirectly employed by him or anyone for whose acts he may be liable,
regardless of whether it is caused in part by a party indemnified
hereunder . . . . 


Id. at 413. The Dallas court of Appeals held that this paragraph did not expressly
state that the contractor was to be indemnified for its own negligence. Id. at 414. 

 Clark, however, relies on three opinions to show that the indemnity provision
is enforceable. See Enserch Corp. v. Parker, 794 S.W.2d 2 (Tex. 1990); ARD v.
Gemini Exploration Co., 894 S.W.2d 11 (Tex. App.--Houston [14th Dist.] 1994, writ
denied); Maxus Exploration Co. v. Moran Bros. Inc., 817 S.W.2d 50 (Tex. 1991). All
three cases are distinguishable.

 In Enserch, the Texas Supreme Court held that an indemnity agreement passed
the express negligence test because the language in the indemnity agreement
sufficiently defined the parties' intent that Christie (the contractor) would indemnify
Enserch (the owner) for the consequences of Enserch's own negligence. See Enserch,
794 S.W.2d at 8. The contract stated, 

 [Christie] assumes entire responsibility and liability for any claim or actions
based on or arising out of injuries, including death, to persons. . . alleged to
have been sustained in connection with or to have arisen out of or incidental
to the performance of this contract by [Christie], its agent and employees, and
its subcontractors, their agents and employees, regardless of whether such
claims or actions are founded in whole or in part upon alleged negligence of
[Enserch], [Enserch's] representative, or the employees, agents, invitees, or
licensees thereof." 


Id. at 6-7. The supreme court held that the contract was "sufficient to define the
parties' intent that Christie indemnify Enserch for the consequences of Enserch's own
negligence." Id. at 8. Unlike the Clark-Cabo agreement which does not specifically
state that Cabo will indemnify Clark and Randalls for their own negligence, the
indemnity language in Enserch specifically informed the parties that Christie would
indemnify Enserch for negligence, including the negligence of Enserch. We disagree,
therefore, with Clark's contention that Enserch compels us to hold that the indemnity
provision in the instant case is enforceable.

 Likewise, in ARD, the indemnity agreement stated that 

[s]uch obligation of the contractor to indemnify the Company
Indemnified Parties shall be without regard to the cause or causes
(including preexisting conditions or conditions of the workplace or
equipment provided by the Company) or the negligence of the Company
Indemnified Parties, whether the negligence be active or passive, sole
or concurrent, simple or gross, comparative, contractual, or any other
degree or type of negligence.


894 S.W.2d at 14. This language expressly states that the indemnity agreement will
apply regardless of the cause or causes of the claim or the "negligence of the
Company." The language in the ARD indemnity agreement, therefore, expressly
provides for indemnity for the Company's own negligence. Conversely, the Clark-Cabo agreement does not contain language expressly providing for indemnification
for Clark's or Randalls' own negligence.

 Finally, Maxus is not applicable because it was decided under Kansas law. 
Moreover, although the Texas Supreme Court stated in Maxus that it "thinks that [the
indemnity agreement] meets the requirement of Texas law that the indemnity
agreement be express," later in the opinion, the court opined that "[w]e express no
opinion on whether the indemnity provisions at issue would be valid under Texas
law." 817 S.W.2d at 58. Thus, we disagree with Clark that Maxus supports a holding
that the Clark-Cabo agreement contains an enforceable indemnity provision. 

 Accordingly, we hold that the indemnity provision in the Clark-Cabo
agreement does not express in specific terms the intent of the parties that Cabo
indemnify Clark and Randalls for their own negligence. See Ethyl, 725 S.W.2d at
708; Adams, 728 S.W.2d at 414. Therefore, we conclude that the indemnity provision
is unenforceable. See Fisk Elec. Co. v. Constructors & Assocs., 888 S.W.2d 813, 815
(Tex. 1994) ("Either the indemnity agreement is clear and enforceable or it is not."). 
Because we conclude that the Clark-Cabo agreement does not contain an enforceable
indemnity provision between Clark and Randalls on the one hand, and Cabo on the
other, we sustain Cabo's second issue on appeal. We need not address Cabo's
remaining issues. See Tex. R. App. P. 47.1.

Conclusion


 We reverse the judgment and remand the cause to the trial court for further
proceedings consistent with this opinion.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.

1. The agreement is a "Standard Form of Agreement Between Contractor and
Subcontractor" entitled AIA Document A401-1997.